UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CIVIL ACTION NO. 06-287-JBC**

**VICKY L. STANFIELD,**                                                      **PLAINTIFF,**

**V.**                       **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                          **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

The plaintiff, Vicky Stanfield, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner. The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion for summary judgment (DE 6) and grant the Commissioner's motion for summary judgment (DE 7).

**I.**     **Background**

The plaintiff alleges that she became disabled on September 5, 2003, due to chronic low back pain, hepatitis C, depression, and anxiety. *See, e.g.*, DE 6 at 2. A formal hearing on the plaintiff's application for Disability Insurance Benefits was held before an administrative law judge ("ALJ") on February 22, 2006, in Lexington, Kentucky. The ALJ denied the plaintiff's application, a decision which was upheld by the Appeals Council, and the plaintiff then filed this application for judicial review.

Judicial review of the ALJ's decision is limited to determining whether the

ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards.  *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility.  *Id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even if the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip*, 25 F.3d at 286.

In determining disability, the ALJ conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can perform her past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform her past relevant work, whether significant numbers of other jobs exist in the national economy which she can perform.  *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**II.     The ALJ's Determination**

At Step 1, the ALJ found that the plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. (R. at 18.) At step 2, the ALJ found that the plaintiff "has the following severe impairments: chronic low back pain . . .; hepatitis C; depression, not otherwise specified; anxiety not otherwise specified; pain disorder; and polysubstance abuse, in remission by history." *Id.* (internal citations omitted). At Step 3, however, the ALJ found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" because "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." *Id.* at 20. At Step 4, the ALJ found that the plaintiff's limitations prevent her from performing her past relevant work as a staff associate and a secretary, and the ALJ further found the transferability of the plaintiff's job skills to be immaterial to the determination of disability due to her age, based on 20 C.F.R. § 404.1568. *Id.* at 22. At Step 5, the ALJ found that the plaintiff "has the residual functional capacity for light and sedentary exertional work activity;" more specifically, the ALJ found that although her capacity "to perform all or substantially all of the requirements of this level of work has been impeded[,]" the plaintiff could still "perform the requirements of representative occupations such as inspecting" at both the light exertional and the sedentary levels. *Id.* at 20, 22-23. Therefore, the ALJ concluded that the plaintiff

3

"has not been under a 'disability,' as defined in the Social Security Act, from September 5, 2003 through the date of this decision." *Id.* at 23 (internal citations omitted).  After considering the available evidence, the ALJ also found "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." *Id.* at 20 (emphasis omitted).

**III.    Analysis**

The plaintiff argues that the ALJ's conclusions were not supported by substantial evidence because the ALJ failed to give sufficient deference to the conclusions of her treating physician, Dr. Huang.  The plaintiff also argues that the ALJ erred because his assessment of the plaintiff's residual functional capacity ("RFC") differs from the medical opinions upon which the ALJ based his assessment.  The plaintiff also argues that the ALJ erred in relying on improper hypothetical questions posed to the vocational expert who testified at the hearing.  Finally, the plaintiff argues that the ALJ erred in assessing the plaintiff's credibility and by failing to fully consider the limitations of the plaintiff's pain disorder.  The court will consider each argument in turn.

    **A.    The Plaintiff's Treating Physician**

An opinion rendered by a "treating physician" is usually entitled to "substantial deference" so long as it is supported by objective medical evidence,

although the ALJ is not necessarily bound by that opinion. *Jones v. Comm'r of Social Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Provided that the ALJ "sets forth a reasoned basis for [the] rejection[,]" *Jones*, 336 F.3d at 477, the ALJ may reject the treating physician's opinion if it is inconsistent with other evidence in the record. *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390-91 (6th Cir. 2004) (concluding that "it was proper for the administrative law judge to disregard" certain conclusions of a treating physician because the treating physician's conclusions were "inconsistent with the substantial evidence in the record indicating otherwise").

The ALJ discussed at length both Dr. Huang's opinion and the reasons he discounted this opinion. More specifically, the ALJ found that "[a]lthough Dr. Huang submits the claimant is totally disabled, his opinion cannot be given controlling weight" because it "is not fully supported by the medical evidence and is inconsistent with other clinical findings of record." (R. at 21.) Instead, the ALJ relied upon the "findings of occupational medicine specialist Dr. Snider and orthopedist Dr. Nickerson."[1] *Id.* (internal citations omitted). Dr. Nickerson examined the plaintiff and performed an independent medical evaluation on both June 19, 2003, and October 9, 2003. After this second examination, Dr.

---

[1] With respect to Dr. Huang's conclusions about the plaintiff's mental health condition, the ALJ simply noted that the plaintiff "has not sought any mental health treatment" and that Dr. Huang's conclusions were not persuasive because he "is not a mental health professional and therefore is not qualified to comment about the claimant's mental status." (R. at 21.)

Nickerson concluded that the plaintiff "is best described as having a 22% permanent partial impairment of the whole person." *Id.* at 224. Dr. Snider examined the plaintiff and performed an independent medical evaluation on September 29, 2003, concluding that she was "physically capable of continuing to work as an office or clerical worker[,]" and recommending "only generic restrictions against extremely heavy labor (e.g., heavy lifting, change positions from time to time)." *Id.* at 219. Because the opinion of Dr. Huang is inconsistent with the substantial evidence in the record, including the conclusions of Drs. Nickerson and Snider, the court finds that the ALJ's decision was supported by substantial evidence.

**B.     The ALJ's Assessment of the Plaintiff's RFC**

The plaintiff also argues that the ALJ's opinion was not supported by the findings of Drs. Snider and Nickerson because the ALJ's assessment of the plaintiff's RFC differed substantially from these doctors' conclusions. In his decision the ALJ found that the plaintiff has the residual functional capacity to "stand/walk 2 hours in an 8-hour day; sit 6 hours in an 8-hour day; no climbing of ropes, ladders, or scaffolds; occasional climbing of stairs or ramps; occasional bending, twisting, stooping, kneeling, crouching or crawling; no work around concentrated vibration or industrial hazards."[2] (R. at 20.) He also found that the

---

[2] Based on these specific limitations, the ALJ found that the plaintiff retains the residual functional capacity for sedentary *and light* exertional work. As the plaintiff points out, the specific limitations discussed in the ALJ's assessment of the plaintiff's RFC probably constitute a restriction to sedentary work alone. *See,*

6

plaintiff "requires entry level work with simple repetitive procedures, no frequent changes in work routines, no requirement for problem-solving, independent planning, goal setting or more than occasional interaction with the general public; and no fast-paced assembly lines or rigid production schedules." *Id.* With respect to Dr. Snider's conclusion, therefore, the plaintiff is correct, but this point does not undermine the ALJ's decision because he reached a *far more restrictive* assessment of the plaintiff's RFC than Dr. Snider, who recommended only generic restrictions against *extremely heavy labor* while concluding that the plaintiff could return to office or clerical work.

Dr. Nickerson concluded that the plaintiff "should avoid crawling, kneeling, stooping, bending, twisting, climbing ladders and vibration" and that the plaintiff should have the freedom to move from a sitting to a standing position as needed every 30 to 45 minutes.[3] (R. at 232 (emphasis added).) Citing Social Security Rulings 96-9 and 83-12, the plaintiff suggests that these limitations, which were

---

*e.g.*, *Krupa v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 513, 517-18 (E.D. Mich. 2005) (analyzing 20 C.F.R. § 404.1567 and the difference between light and sedentary work). Nevertheless, because the ALJ expressly found that the plaintiff was capable of performing a wide range of jobs, such as inspecting, at the sedentary level, the court finds that the ALJ's ultimate decision to deny the plaintiff's application was supported by substantial evidence.

[3] Dr. Nickerson also concluded that the plaintiff should not lift anything greater than 10 pounds on a maximal basis, anything greater than 5 pounds on an occasional basis, and that the plaintiff should not carry anything greater than 10 pounds. *See* R. at 232. The plaintiff suggests that these limitations would prevent the plaintiff from light work; however, as discussed above, because the ALJ expressly found that the plaintiff was capable of performing a wide range of jobs, such as inspecting, at the sedentary level, the court finds that the ALJ's ultimate decision to deny the plaintiff's application was supported by substantial evidence.

not expressly incorporated into the ALJ's assessment of the plaintiff's RFC, undermine the ALJ's decision because they would prevent the plaintiff from performing the full range of sedentary work.  The plaintiff is correct that these limitations would prevent her from performing the full range of sedentary work, but, contrary to the plaintiff's suggestion, they do not undermine the ALJ's ultimate conclusion because the ALJ *never* found that the plaintiff was capable of performing the *full range* of sedentary work.  Rather, the ALJ expressly found that the plaintiff's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations."  *Id.* at 22.  In fact, the ALJ specifically noted in his decision how many jobs remained available to the plaintiff as a sedentary inspector with a sit/stand requirement.  *Id.* at 22-23.  Accordingly, the court finds that the ALJ adequately explained the justification for his assessment of the plaintiff's RFC, which the court further finds was supported by substantial evidence.

**C.     The Testimony of the Vocational Expert**

The plaintiff also argues that the ALJ erred by omitting Dr. Nickerson's limitations from the hypothetical questions he posed to the vocational expert.  With respect to the sit/stand limitation, the vocational expert expressly included the impact of a sit/stand limitation in responding to the ALJ's hypothetical questions.  *See* R. at 452-53 (stating that the figures for available jobs at both the sedentary and light levels "should be reduced by about 30 percent to account for the sit/stand option").  With respect to the other limitations, the court recognizes that the

specific limitations discussed by Dr. Nickerson and included in the ALJ's assessment of the plaintiff's RFC probably constitute a restriction to sedentary work alone, rather than both sedentary and light work; however, the vocational expert specifically testified that the representative jobs discussed in her hypothetical responses were "primarily sedentary." *Id.* at 453. Therefore, the court finds that ALJ did not err in relying on the responses of the vocational expert.

**D.    The ALJ's Credibility Assessment and the Plaintiff's Alleged Pain Disorder**

The plaintiff also argues that the ALJ erred in discounting the pain she suffers and her credibility about her symptoms. In general, "'[t]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant.'" *Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (per curiam) (6th Cir. 1987) (quoting *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984)). Moreover, "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). In other words, the "[d]etermination of disability from pain is peculiarly within the province of the ALJ." *Villareal*, 818 F.2d at 464 (citing *Houston*, 736 F.2d at 367). In this matter, the ALJ's assessment of the plaintiff's credibility and pain was based on substantial evidence including the ALJ's assessment of her testimony, her daily activities, and the medical record; therefore, the court will not disturb it. Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment (DE 6) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (DE 7) is **GRANTED**.

Signed on September 20, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY